Case 17-02062    Doc 47    Filed 01/29/18    Entered 01/29/18 14:49:05    Desc Main
                      Document         Page 1 of 19

**This order is SIGNED.**



**Dated: January 29, 2018**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>BLACK IRON, LLC,<br><br>　　　　　　Debtor. | Bankruptcy Number: 17-24816<br><br>Chapter 11 |
| BLACK IRON, LLC, a Utah limited liability company,<br>　　　　　　Plaintiff<br><br>vs.<br><br>HATCH, JAMES & DODGE, P.C., a Utah professional corporation,<br>　　　　　　Defendant<br><br>AND RELATED COUNTER- AND THIRD-PARTY CLAIMS | Adversary Proceeding No. 17-2062<br><br>Judge William T. Thurman |

**MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

### I.   Introduction

This matter comes before the Court on the Motion for Summary Judgment filed by Black

Iron, LLC, the Plaintiff (Dkt. No. 22) and the Motion for Summary Judgment filed by Hatch,

James & Dodge, the Defendant (Dkt. No. 23). The Defendant is joined by Litigation Holdings, LLC ("Litigation Holdings"). The Complaint in this adversary proceeding was originally filed in the Fifth Judicial District Court in Iron County on December 2, 2016, and removed to this Court after the Plaintiff filed a voluntary chapter 11 bankruptcy petition on June 1, 2017. All parties to this matter consented to the jurisdiction of the Court in a hearing conducted on August 25, 2017 and memorialized in the order at Dkt. No. 8. The main issue before the Court is which entity owns the claim against and the funds derived from a settlement with a third party. Although the parties styled their motions as motions for summary judgment, which suggests complete relief might be requested, the Court determines that the motions only seek partial relief, and accordingly, the Court does not rule on all issues raised in the complaint as not all issues are before the Court in these motions.

At the hearing on the motion for summary judgment, Dana Farmer appeared on behalf of the Plaintiff, and Mitchell Stephens and Mark James appeared on behalf of the Defendant and Litigation Holdings. The Court heard oral argument, read the briefs filed by the parties, conducted its own independent review of the law and makes the following findings of fact and conclusions of law pursuant to Rule 7052.

**II.     Jurisdiction, Venue and Notice**

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334, and has been expressly consented to by the parties. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1408 and 1409. Notice of the hearing is found to be proper in all respects.

### III. Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[1] Whether a dispute is genuine turns on whether the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. The court does not weigh evidence or make credibility determinations at this point,[2] but is to decide whether there is a genuine issue for trial.

The moving party bears the burden to show that it is entitled to summary judgment.[3] This burden includes properly supporting its summary judgment motion as required by Rule 56(c).[4] Once the moving party meets this burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[5] Because this matter involves motions

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[2] *See id.* at 249.

[3] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[4] *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

[5] *Concrete Works of Colorado, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citations omitted).

for summary judgment filed by each party, the allocation of the burden could become complex, but the parties have not urged the Court to make specific findings about the facts, and so discussion about the burden of proof is limited.

With those standards and settings in mind, the Court now turns to a discussion of the facts and law of this particular case.

## IV. Factual Background

CML Metals Corporation ("CML") owned an iron ore mine located approximately 17 miles west of Cedar City, Utah. In 2011, CML began construction on an iron ore processing plant that was intended to increase the iron content in the materials CML produced from 55% to 65% in order to generate a higher sales price and reduce the amount of waste products in the iron ore shipped to customers. CML contracted with Gilbert Development Corporation ("GDC") to construct the plant.

For various reasons, the iron ore processing plant never operated as designed or intended. The defects and delays resulted in several legal claims. CML approached Hatch, James & Dodge, P.C. ("HJD" or the "Defendant") a Salt Lake City law firm, for legal representation. On July 3, 2013, the parties entered into an engagement letter in which HJD agreed to "represent CML in connection with any and all claims CML has or may have in any way arising out of and/or relating to the series of events, including equipment issues and plant slowdowns and shutdowns, occurring in or about approximately late 2011 and thereafter . . . . These claims . . . include all claims against insurers, insurance brokers, engineers, manufacturers, contractors, and all related

or associated persons and/or entities."[6] The parties agreed on a monthly payment of $10,000.00 plus a 32.5% contingency fee of any sums recovered. The percentage was later reduced to 30%. The Court will refer to the engagement letter and subsequent arrangements as the "Representation Agreement."

Of the lawsuits filed, most were resolved, but one lawsuit forms the basis for the matter before this Court. Global Equipment Marketing, Inc. dba Matec ("Matec") provided filter presses to CML for use in the iron ore processing plant, but they did not function as intended. CML did not pay the balance owing on the filter presses and Matec filed suit for the balance due. CML countersued for damages associated with the plant's failure (the "Matec Lawsuit").

On behalf of CML, HJD negotiated the Matec Lawsuit and arrived at a settlement. The settlement agreement, signed on September 8, 2014, (the "Matec Settlement Agreement" or "Agreement") obligated Matec to remove the filter presses from CML's property within 30 days of signing. Matec was also to make a payment of $150,000.00, which was received shortly after the Agreement was signed. Matec was also obligated to provide a written document that could be recorded and enforced under the Uniform Commercial Code against each of the filter presses. The Agreement also required Matec to refurbish and attempt to sell the filter presses. Any money from the sale of the filter presses was to be remitted to CML. Two years after the Agreement was executed, Matec was to pay CML an additional $1,125,000.00 less any amounts already paid from sales. The filter presses were not sold within that two year period. By the terms of the

---

[6]Exhibit A to the Motion for Summary Judgment filed by the Defendant at Dkt. No. 23.

Agreement, Matec was required to pay the $1,125,000.00 in three payments of $375,000.00 each, due in September, October and November 2016.

Matec did not pay in full. Instead, Matec made wire transfers in varying amounts into HJD's trust account in September and October 2016 that eventually totaled approximately $371,000.00. Matec later made a payment of approximately $50,000 to the Plaintiff. All of the funds have now been deposited with this Court (the "Funds").[7]

In March 2015, approximately 6 months after the Matec Settlement Agreement had been signed but 18 months before the additional payment of $1,125,000.00 was due, CML sold its assets to GDC under an Asset Purchase Agreement ("APA"), which assigned them to Black Iron, the Plaintiff in this proceeding.

The following sections of the APA are relevant to the Court's analysis:

**Section 1.01(a) Included Assets**. CML will sell, and GDC will purchase, all of CML's assets . . . except the Excluded Assets (defined below) . . . . The parties agree that the Assets include all property of CML not otherwise excluded in this Agreement. A list of certain of the Assets is attached as Schedule 1.01(a) hereto.

. . .

**(c) Excluded Assets**. The Sellers will retain the assets listed on Schedule 1.01(b) (the "Excluded Assets").

The Excluded Assets listed on Schedule 1.01(b) are central to the parties' dispute, and the Court quotes the applicable paragraph:

---

[7] *See* Order Regarding Transfer and Deposit of Funds with Bankruptcy Court, signed Sept. 1, 2017 and entered at Dkt. No. 14.

6

**B. Claims**. All causes of action against CML's customers and vendors including, without limitation, causes of action against Samuels Engineering and First Union Rail.

Shortly after the APA was signed, GDC assigned all of its interest in the APA to Black Iron, the Debtor and Plaintiff in this proceeding. CML assigned its remaining interests to Guidepoint Management, LLC and then those interests were acquired by Litigation Holdings. Accordingly, the three parties involved in this dispute are the Plaintiff, the entity that holds the assets purchased under the APA, the Defendant, the law firm that negotiated the Matec Settlement Agreement and asserts a claim on 30% of the Funds, and Litigation Holdings, the entity that holds any interests that CML may have retained under the APA.

The Plaintiff asserts that ownership of the Matec Settlement Agreement passed to it under the APA, and it is therefore entitled to the Funds. The Plaintiff further asserts that the Representation Agreement was between CML and the Defendant, and while the Plaintiff is willing to pay the Defendant a reasonable hourly fee for its time in collecting the Funds, it does not believe it is obligated to pay the 30% contingency fee. The Defendant and Litigation Holdings together argue that the Matec Settlement Agreement never passed to GDC, but was retained by CML, and so passed to Litigation Holdings. As an alternative argument, the Defendant argues that, if the Matec Settlement Agreement and the Funds are owned by the Plaintiff, then the Representation Agreement is enforceable under a variety of legal theories and the Plaintiff should pay the 30% contingency fee to the Defendant.

The disputed facts in this matter took place after the APA was signed and involve discussions and representations of how ownership of the Matec Settlement Agreement was

affected by the APA. The parties have agreed to postpone completion of factual discovery, requesting that the Court resolve some of the legal issues and narrow the scope of factual issues in dispute.

**V.     Discussion**

**A. Contract Interpretation**

The starting point for the Court's discussion is the APA itself. The APA was signed on April 2, 2015, and the Closing Date was left blank.[8] For purposes of this proceeding, the Court will use April 2, 2015 as the Closing Date.

The interpretation of the contract will determine the interests the parties hold in the Matec Settlement Agreement. "For purposes of most bankruptcy proceedings, property interests are created and defined by state law."[9] In addition, the APA itself states that Utah law applies to determination of its validity and interpretation.[10]

Determining whether a contract is ambiguous is a question of law.[11] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a

---

[8] *See* Asset Purchase Agreement, attached as Exhibit A to the Answer, Separate Defenses and Counterclaims filed by HJD and filed with this Court as Dkt. No. 1.

[9] *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) (citation omitted); *see also Butner v. United States*, 440 U.S. 48 (1979).

[10] *See* APA at Article 5.03 Governing Law.

[11] *See Holladay Bank & Trust v. Gunnison Valley Bank*, 319 P.3d 747, 750 (Ct. App. Utah 2014).

matter of law."[12] When a Court undertakes to interpret a contract, its purpose is to discern and apply the intentions of the parties to the contract.[13] "A contract is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies. . . . But terms are not ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests."[14]

The APA is a straightforward asset purchase agreement. Its default catch-all provision is that "all property of CML not otherwise excluded in this Agreement" would pass to GDC.[15] Therefore, unless the Matec Settlement Agreement was excluded by another term of the contract, it was transferred to GDC and thence to the Plaintiff.

The APA excluded from the asset transfer "[a]ll causes of action against CML's customers and vendors including, without limitation, causes of action against Samuels Engineering and First Union Rail." The Defendant and Litigation Holdings contend that the Matec Settlement Agreement and the Funds were connected to unripened causes of action against a CML vendor and therefore were not assigned to GDC or the Plaintiff, but that the right to demand payment from Matec was expressly retained by CML. The Plaintiff, on the other hand, asserts that as of the Closing Date, there had been no breach of the Agreement, and therefore no

---

[12] *Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003).

[13] *See id.*

[14] *Holladay Bank & Tr. v. Gunnison Valley Bank*, 319 P.3d 747, 751 (Ct. App. Utah 2014) (citing to *Daines v. Vincent* 190 P.3d 1269 (Utah 2008); *Saleh v. Farmers Ins. Exchange,* 133 P.3d 428, 432 (Utah 2006)) (internal quotation marks citation omitted).

[15] *See* APA at Section 1.01(a).

9

cause of action existed, and therefore the Matec Settlement Agreement was not excluded, but passed to the Plaintiff.

Accordingly, these arguments compel the Court to define a cause of action and determine whether or not the APA excluded all causes of action existing on the Closing Date, or whether the exclusion existed in perpetuity and excluded causes of action arising after the Closing Date.

### B. Cause of Action

A cause of action is not a phrase with one definition. "A cause of action may mean one thing for one purpose and something different for another."[16] For example, in the *Memphis Cotton Oil* case, the Supreme Court suggested that the definition of a cause of action may be affected by whether or not the definition is sought in order to apply res judicata, or to determine whether a pleading may be amended, or a right has been infringed.[17] Accordingly, the Court undertakes to define a cause of action for purposes of this proceeding, knowing that its definition may not control the meaning of the term in another context.

A cause of action comes into being when all the events necessary to bring a claim in court have occurred. This necessitates a right held by one party, and a violation of that right by another party:

> Every judicial action must therefore involve the following elements: A primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty

---

[16] *U.S. v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67-68 (1933).

[17] *See id.*

10

resting on the defendant springing from this delict, and finally the remedy or relief itself. Every action, however complicated, or however simple, must contain these essential elements. Of these elements, the primary right and duty and delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the Codes of the several states.[18]

The Matec Settlement Agreement is a contract. A cause of action in the context of contract law is breach of the contract. The elements are: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) a failure to perform by the other party; and (4) damages.[19]

The parties dispute which actions and failures by Matec caused the breach of contract, and when the breach occurred. The Plaintiff contends that the Agreement was not breached until approximately 18 months after the APA's Closing Date (when Matec failed to make the full additional payment of $1,125,000.00), and the APA transferred only causes of action in existence on the Closing Date. The Defendant and Litigation Holdings contend that even if no cause of action had yet matured, CML retained all future causes of action under the terms of the APA. In the alternative, the Defendant and Litigation Holdings contend that Matec had already breached the Agreement as of the Closing Date, although the actions of Matec that allegedly caused the breach of the Agreement are a subject of dispute. Whether or not Matec had breached the Agreement on or before the Closing Date, which would have created a cause of action, is a material question of fact which the Court cannot determine on the record before it.

---

[18] *Felt City Townsite Co. v. Felt Inv. Co.*, 167 P. 835, 838 (Utah 1917).

[19] *See Simmons Media Group, LLC v. Waykar*, 335 P.3d 885, 890 (Utah Ct. App. 2014) (citing to *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001)).

However, the Defendant also argues a point of contract interpretation, which is that the APA excluded "all" causes of action from the asset transfer, regardless of whether they arose before or after the Closing Date. The Court must therefore determine whether the word "all" in the APA means all causes of action existing on the Closing Date, or whether it means all causes of action accruing at any time. "All" means "the whole amount," or "any whatever."[20] "The ordinary meaning of contract terms is often best determined through standard, non-legal dictionaries."[21] These definitions do not seem to allow any contraction of the scope of "all." If the parties to the APA had intended to confine the exclusion to all causes of action existing on the Closing Date, it would have taken very few words to create that effect. Since they did not add those words, the Court will not do so.

The Plaintiff argues that the interpretation proposed by the Defendant would lead to an absurd result, in that years from now, if the Plaintiff continued a contract with a customer or vendor of CML and that entity breached that contract, the cause of action would revert back to CML and the Plaintiff would have no way to sue to enforce its rights. This would indeed be an absurd result, but the exclusionary clause contains self-limiting language that prevents such an outcome. The exclusion applies to "all causes of action against CML's customers and vendors . . . ." If, after the Closing Date, the Plaintiff continued to do business with a customer or vendor, it would cease to be CML's customer or vendor, and would be in a business relationship with the

---

[20] *See https://www.merriam-webster.com/dictionary/all.*

[21] *Warburton v. Virginia Beach Federal Sav. & Loan Ass'n*, 899 P.2d 779, 782-83 (Utah Ct. App. 1995).

Plaintiff. At that point, CML would not have a right to enforce a cause of action against an entity who is no longer its customer or vendor. The Plaintiff would have the right to any cause of action arising from dealings with its own customers and vendors.

It is undisputed that Matec was a vendor of CML. The record before the Court is meager on this point, but it does not appear that Matec has any ongoing business relationship with the Plaintiff as either a customer or a vendor. Because the facts are not as well developed as the Court would like, the Court does not make any findings on this issue, except to conclude that it would not be absurd for CML to retain a future cause of action against an entity with whom it had extensive business dealings, and which does not appear to be doing business with the Plaintiff.

### C. The Liabilities Under the Representation Agreement

The Defendant has argued, in the alternative, that if the Matec Settlement Agreement and the Funds passed to the Plaintiff under the APA, then the Plaintiff is required to pay the Defendant the 30% contingency fee provided for the in the Representation Agreement. Because the Court cannot determine at this time which entity owns the Matec Settlement Agreement and the Funds on the record before it, discussion and determination of this question is reserved until the factual issue is settled.

### C. The Attorney's Lien

The Defendant argues that it has an attorney's lien on the Funds pursuant to Utah Code Ann. § 38-2-7 which states that:

> (2) An attorney shall have a lien for the balance of compensation due from a client on any money or property owned by the client that is the subject of or connected with work performed for the client, including:
> . . .
> (b) any funds held by the attorney for the client, . . .
> (c) any settlement . . . in the client's favor in any matter or action in which the attorney assisted, including any proceeds derived from the matter or action, whether or not the attorney is employed by the client at the time the settlement, verdict, report, decision, or judgment is obtained.

The Court concludes under the plain language of this statute that the Defendant had an attorney's lien on the Funds received under the Matec Settlement Agreement. The question is whether or not the obligations of the lien passed to the Plaintiff. The Court would need to decide that question only if the Funds, which are the "proceeds derived from the matter or action," passed to the Plaintiff. As stated above, ownership of the Funds cannot be decided at this time.

The Utah statute provides that an attorney's lien follows the property in certain situations. "Any person who takes an interest in any property, other than real property, that is subject to an attorney's lien with actual or constructive knowledge of the attorney's lien, takes the interest subject to the attorney's lien."[22] While the Court can determine as a matter of law that the Matec Settlement Agreement and the Funds received thereunder are property that was subject to an attorney's lien, the question of fact still at issue is whether or not the Plaintiff had constructive knowledge of the attorney's lien.

The Defendant argues that the APA specifically referred to the Representation Agreement, which contained the contingency fee provisions, and therefore the Plaintiff had

---

[22]Utah Code Ann. § 38-7-2(8).

constructive knowledge of the contingency fee arrangement and the actions that were subject to that arrangement.[23] The Plaintiff suggests that it had no knowledge of the Matec Settlement Agreement at the time the APA was signed, and therefore it could have no knowledge, either actual or constructive, of an attorney's lien attaching to it.

The determination of whether or not a party had knowledge is a question of fact. Thus, there are two genuine issues of material fact that preclude the Court from adjudicating whether or not the attorney's lien would have passed to the Plaintiff. One is the question of whether the Funds passed to the Plaintiff at all. The second issue of material fact is whether or not the Plaintiff knew of the asset and the attorney's lien attaching to it. Accordingly, summary judgment on this issue is DENIED.

### D. Attorney Fees and Costs

Litigation Holdings has requested attorney fees and costs, as provided for in the APA:

> Section 5.05 Attorney Fees and Costs. In any litigation, mediation, arbitration, or other legal or equitable proceeding by which any Party either seeks to enforce its rights under this Agreement or seeks a declaration of any rights or obligations under this Agreement, the prevailing Party shall be awarded its actual attorney fees, costs, and expenses incurred.

Generally, each party is responsible for paying its own attorney's fees and costs unless specific authority granted by statute or contract allows the assessment of those fees against the

---

[23]The Defendant has also produced an email dated March 28, 2015 with the subject line "Fwd: AIG/Lexington Documents" and attaching several documents, including one labeled "Hatch, James & Dodge Engagement Letter-Fully Executed.pdf." The attachment is not included with the email. There are genuine issues of fact about the information this email conveyed, and the Court does not make findings related thereto.

other party, or in other limited circumstances not applicable here. The APA quite clearly allows an assessment of fees, costs and expenses in favor of the prevailing party if either party seeks a declaration of its rights or obligations under the APA.

Litigation Holdings and the Plaintiff are the successors to the original parties to the APA, CML and GDC. The parties have sought a declaratory judgment about the rights to the Matec Settlement Agreement and the Funds paid thereunder. Because summary judgment is denied on that point, it would be premature for the Court to award attorney fees and costs, as neither side has yet prevailed.

## VI. Conclusion

The Court deems it helpful to summarize the requests before it. All three parties, the Plaintiff, the Defendant and Litigation Holdings, have moved for summary judgment in their favor on various issues. The parties acknowledge that many of the facts are in dispute, and factual discovery has not yet been completed. Only the legal issues are before the Court on summary judgment, yet many of the undeveloped and disputed factual allegations have been presented in the pleadings, and legal arguments based on those facts have been briefed and presented to the Court. Many of the exhibits attached to the motions are presented as support for factual allegations, yet the admissibility and weight of both the facts and the exhibits are disputed. The motions for summary judgment partly adopted the causes of action filed in the complaint and the responses thereto, but not all of them are presented for judgment. The Court is thus left with the task of picking out which issues it may rule on and which must be reserved for further factual development.

From the matters discussed in the motions for summary judgment, the Court rules as follows:

**Declaratory Judgment of Rights under the APA**. All parties have requested a declaratory judgment of rights under the APA, essentially determining which party is entitled to the Funds and to the Matec Settlement Agreement. The Court determines as a matter of law that CML retained all existing and future causes of action relating to its own customers and vendors. Whether Matec was a vendor of CML only, or a vendor of the Plaintiff after the Closing Date, is a genuine issues of material fact. Summary judgment is DENIED.

**Existence of an attorney's lien**. Final decision on this matter requires further factual development on the question of whether or not the Plaintiff had actual or constructive knowledge of the attorney's lien. Summary judgment is DENIED.

**Waiver and Estoppel**. These defenses to the existence of an attorney's lien are fact intensive, and there are genuine issues of material fact. Summary judgment is DENIED.

**Assumption of the Representation Agreement**. This question is reserved until the determination of which entity owns the Matec Settlement Agreement and the Funds is finalized. Summary judgment is DENIED.

**Turnover of Proceeds**. The Defendant and Litigation Holdings have requested injunctive relief requiring that the Funds be deposited with the Court. This has already taken place, and so summary judgment on this issue is DENIED as moot.

**Expenses and attorney's fees.** Both the Plaintiff and Litigation Holdings have requested attorney's fees, based on the paragraph in the APA that awards attorney's fees and costs to the

prevailing party. The Court has determined that neither party has yet prevailed, and so summary judgment is DENIED without prejudice as premature.

As further factual determinations need to be made in this matter, and since the parties have temporarily delayed factual discovery while these legal matters were presented to the Court, the Court orders that a scheduling conference be held in the near future. The Court will issue a notice of hearing for scheduling.

_____END OF DOCUMENT_____

oo00–00oo

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Black Iron, LLC
6249 West Gilbert Industrial Court
Hurricane, UT 84737
    *Plaintiff*

Dana T. Farmer
Durham Jones & Pinegar
372 24th Street, Suite 400
Ogden, UT 84401
    *Attorney for Plaintiff*

Mark F. James
Hatch, James & Dodge
10 West Broadway, Suite 400
Salt Lake City, UT 84101
    *Defendant*

Litigation Holdings, LLC
c/o Hatch, James & Dodge
10 West Broadway, Suite 400
Salt Lake City, UT 84101
    *Third party plaintiff*

United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
    *U.S. Trustee*